IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA D. O'DELL,

          Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 6:16-cv-00397-MA

OPINION AND ORDER

KATHERINE EITENMILLER
BRENT WELLS
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401

      Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

ERIN F. HIGHLAND
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 98104
Seattle, WA 98104-7075

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Linda D. O'Dell seeks judicial review of the partially favorable decision of the Commissioner of Social Security denying in part her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court reverses and remands that portion of the Commissioner's decision denying benefits from June 16, 2010 through November 1, 2013, for an immediate calculation and award of benefits.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on February 28, 2012, alleging disability beginning January 1, 2004, due to fibromyalgia/myofascial pain syndrome, major depressive disorder/bipolar disorder, panic disorder, anxiety disorder, attention deficit disorder ("ADD"), migraines, heart problems, osteoarthritis, asthma, hernia, and irritable bowel syndrome. Tr. Soc. Sec. Admin. R. ("Tr.") 128, ECF No. 11. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on March 17, 2014, at which Plaintiff appeared with her attorney and testified. A vocational expert, Jeffrey Tittelfitz, also appeared at the hearing and testified. At the hearing, Plaintiff amended her onset date to June 16, 2010. On December 19, 2014, the ALJ issued a partially favorable decision, finding Plaintiff was not disabled prior to November 1, 2013, but beginning that date, her age category changed, and she became disabled applying Medical-

Vocational Rule 202.06. Tr. 29. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1959, and was 53 years old on the amended onset of disability date and 55 on the date of the ALJ's decision. Tr. 128. Plaintiff completed high school and completed an associate's degree in Early Childhood Education. Tr. 87, 265. Plaintiff has worked as a home health care provider for her mother and brother, and worked part time as an assistant cook for Meals on Wheels. Tr. 88-90.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2012. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her amended alleged onset of disability through her date last insured. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, panic disorder without agoraphobia, attention deficit disorder without mention of hyperactivity, bipolar disorder, myofascial pain syndrome, osteoarthritis in the bilateral knees, and right knee degenerative changes.

At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work with additional limitations:

> [Plaintiff] is limited to lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently. She is limited to sitting for up to eight hours, standing for up to four hours, and walking for up to one hour in an eight-hour day, with normal breaks. At one time, without interruption, [Plaintiff] can sit up to two hours, stand up to one hour, and walk up to 15 minutes. She may engage in occasional bilateral foot control operation. She can occasionally climb stairs and ramps. She can never climb ladders, ropes, or scaffolds. [Plaintiff] may occasionally balance, stoop, kneel, crouch, or crawl. [Plaintiff] must avoid all unprotected heights. She must avoid moderate exposure to moving mechanical parts, operation of a motor vehicle, humidity, wetness, dust, odors, fumes, and pulmonary irritants; she also must avoid moderate exposure to extreme cold and extreme heat. [Plaintiff] must avoid moderate exposure to excessive noise. [Plaintiff] requires an independent work setting free of frequent public or peer interactions. She must have a structured, predictable work setting. She will require a work environment free of fast-paced production requirements.

Tr. 23.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. The ALJ applied the rules non-mechanically and determined that as of November 1, 2013, Plaintiff's age category changed to an individual of advanced age. At step five, the ALJ found that prior to November 1, 2013, considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff could have performed, including such representative occupations as: electronics worker, office helper, and small products assembler. The ALJ also found that beginning November 1, 2013, the date Plaintiff's age category changed, and considering Plaintiff's age, education, work experience and residual functional capacity, directly applying Medical-Vocational Rule 202.06 requires a finding of

"disabled." Tr. 29. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social

Security Act prior to November 1, 2013, but became disabled on that date. Tr. 29.

## ISSUES ON REVIEW

On appeal to this Court, Plaintiff contends the following errors were committed: (1) the ALJ

improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinions of John Ellison,

M.D., Craig Morton, Psy.D., and Weili Zhang, D.O.; and (3) the RFC fails to incorporate all her

limitations. The Commissioner argues that the ALJ's decision is supported by substantial evidence

and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred,

Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations

omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or

detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014);

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v.*

*Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the

Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its

judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

**I.** **The ALJ Erred in Evaluating the Medical Evidence**

*A. Standards*

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014); *Garrison,* 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. §§ 404.1527(c), 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 404.1527(c). *Accord* 20 C.F.R. § 416.927(c). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 404.1527(c); *Ghanim,* 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he

ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotations omitted). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Id.*

### B.     Dr. Ellison

John Ellison, M.D., performed a comprehensive musculoskeletal examination on November 27, 2013. Tr. 528. Plaintiff reported to Dr. Ellison that she has been clean and sober for nine years, has fibromyalgia, and gets migraine headaches one a month. Plaintiff reported that she has irritable bowel syndrome, and that her last colonoscopy was normal. Tr. 528. Plaintiff also reported to Dr. Ellison that she can stand for 20 minutes, walk for a mile, can navigate stairs, is able to drive short distances, can do some housecleaning and cooking, and can lift and carry 20 pounds. Tr. 528.

On examination, Dr. Ellison found that Plaintiff had mild tenderness in her muscles, but not in especially in the fibromyalgia points, and had some tenderness in the finger joints, without evidence of arthritis. Tr. 529. Dr. Ellison found that Plaintiff complained of pain on deep knee bending, but his examination found that there was no crepitation, effusion or instability, and that Plaintiff had normal station and gait, could tandem walk, and walk on heels and toes. Additionally, the examination revealed that Plaintiff had full motor strength, muscle tone, intact sensation, and normal deep tendon reflexes. Tr. 529. Dr. Ellison also provided a Medical Source Statement in

which he assessed that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; could sit for eight hours, stand for four hours, and walk for one hour. Tr. 532. Dr. Ellison limited Plaintiff to occasional bilateral reaching, handling, fingering, feeling, pushing and pulling, and occasional bilateral use of foot controls. Tr. 533. Dr. Ellison also assessed Plaintiff with some environmental and postural limitations. Tr. 534-35.

In the decision, the ALJ gave "significant weight" to most portions of Dr. Ellison's opinion, but gave "no weight" to the manipulative limitations. Tr. 25. Plaintiff challenges the ALJ's determination to give no weight to the Dr. Ellison's manipulative limitations, contending that Dr. Ellison's examination findings adequately support the assessed limitations. Tr. 25. The Court disagrees.

In the decision, the ALJ reasoned that Dr. Ellison's opinion concerning Plaintiff's manipulative limitations is not supported by objective evidence. Tr. 25. As the ALJ discussed, aside from Dr. Ellison's mildly decreased range of motion in Plaintiff's shoulders, there is no objective support for the assessed limitations. As the ALJ correctly indicated, Plaintiff did not complain of shoulder pain due to her myofascial pain syndrome or other ailments until October 22, 2013. Tr. 494. Plaintiff received osteopathic manipulative treatment for her pain on November 5 and 8, 2013, and as the ALJ correctly indicated, Plaintiff reported her pain decreased from an eight out of ten to a three out of ten. Tr. 561, 565. Additionally, as the ALJ correctly found, there is no objective evidence supporting Dr. Ellison's assessed handling, fingering, and feeling limitations. As Plaintiff correctly notes, on March 23, 2012, she complained of swelling and tenderness in her hands to Dr. Zhang, who observed redness in her hands. Tr. 370. Dr. Zhang recommended rest, heat, and over-the-counter pain medication, and indicated reassessment in six weeks if her finger pain had not

resolved. Tr. 371. Indeed, at her next visit with Dr. Zhang on April 30, 2012, Plaintiff did not mention finger pain or hand swelling, nor did she at any subsequent examination. Tr. 362-66. To be sure, Plaintiff does not identify – and the record fails to disclose – any other objective evidence, imaging, testing, diagnosis, or other medical evidence that would support the manipulative limitations assessed by Dr. Ellison. See Pl.'s Br. at 15. Thus, the Court concludes the ALJ reasonably interpreted the record, and has provided specific and legitimate reasons, backed by substantial evidence, for discounting Dr. Ellison's manipulative limitations.

### C. Dr. Zhang

Dr. Zhang became Plaintiff's treating physician on March 23, 2012 and he has treated Plaintiff on seven occasions. Tr. 367, 524. In an October 31, 2013 letter, Dr. Zhang opined that Plaintiff is not capable of performing medium or light work, but is limited to sedentary work. Tr. 524-27. Additionally, Dr. Zhang stated that he could not assess whether Plaintiff was capable of sustaining sedentary work due to her mental health issues. Tr. 526. The ALJ gave Dr. Zhang's opinion "little to no weight." Tr. 26. Dr. Zhang's opinion is contradicted by those of Dr. Ellison, as well as nonexamining agency physician Guillermo Rubio, M.D., and Martin Kehrli, M.D. Tr. 137-39, 169-70, 531-36. Therefore, the ALJ was required to provide specific and legitimate reasons for assigning limited weight to Dr. Zhang's opinion.

The ALJ provided two reasons for discounting Dr. Zhang's opinion: (1) Dr. Zhang's treatment records to do not support his opinion; and (2) physical findings do not suggest a limitation to sedentary work. Inconsistency between a physician's opinion and his treatment notes, or inconsistency between a physician's opinion and the medical record, are specific and legitimate reasons for giving little weight to that opinion. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 &

1041 (9th Cir. 2008); *Valentine*, 574 F.3d at 692-93. The ALJ has provided sufficient reasons for discounting Dr. Zhang's opinion.

As the ALJ detailed, Dr. Zhang's treatment notes do not fully support his opinion that Plaintiff is limited to sedentary work. Indeed, Dr. Zhang's March 23, 2012 treatment notes show that Plaintiff had pain and swelling in her hands that she attributed to a cold house, and her reflexes were intact and she had five of five muscle strength in all extremities with normal tone and symmetry. Tr. 367, 370. In May 2013, Plaintiff was treated by Dr. Zhang for a healed fracture of her left foot and she was able to walk without pain. Tr. 21, 504. In July 2013, Plaintiff saw Dr. Zhang for her annual physical, and reported no major concerns or complaints. Tr. 498. In October 2013, Dr. Zhang indicated that Plaintiff's depression had increased her myofascial pain. Tr. 496. Yet, as the ALJ discussed, in November 2013, Plaintiff reported that osteopathic manipulations had decreased the pain in her shoulders. Tr. 562. Dr. Zhang's treatment notes show that Plaintiff continued to have full muscle strength in all her extremities with normal tone and symmetry. Tr. 562-63. Based on the absence of any significant findings, the ALJ could reasonably discount Dr. Zhang's opinion as inconsistent with his opinion that Plaintiff is limited to sedentary work.

Moreover, as the ALJ detailed, the physical findings in the record do not suggest a limitation to sedentary work. As the ALJ detailed, Dr. Ellison performed a contemporaneous examination of Plaintiff, and concluded that Plaintiff is limited to a reduced range of light work. Tr. 25. And, as noted above, the ALJ did not err in evaluating Dr. Ellison's opinion. Accordingly, the Court concludes that the ALJ has provided specific and legitimate reasons, backed by substantial evidence, for discounting Dr. Zhang's October 31, 2013 opinion. *Batson*, 359 F.3d at 1195 (holding ALJ may

discount treating physician's opinions that are unsupported by the record as a whole or other objective findings).

### D. Dr. Morton

Plaintiff contends that the ALJ erred in discounting the opinion of Craig Morton, Psy.D., her treating psychologist, who opined that she is not capable of sustaining attendance, productivity and social interaction requirements necessary to sustain employment.[1] The Court agrees.

Dr. Morton has been Plaintiff's primary mental health provider since August 26, 2011, and has seen Plaintiff approximately once per month. Tr. 538. The record contains numerous treatment notes from Dr. Morton, as well as a January 17, 2014 opinion letter. Tr. 538. In his opinion, Dr. Morton indicated that Plaintiff has been diagnosed with major depression, panic disorder, and attention deficit disorder, and that she experiences depressed mood, decreased appetite, insomnia, lack of interest in activities, as well as panic attacks characterized by vomiting, diarrhea, blurry vision, shaking, and heart palpitations. Tr. 538. Dr. Morton opined that Plaintiff's symptoms interfere with her "ability to attend to work reliably, to work around other people without excessive anxiety, to concentrate for sustained periods of time," and have energy to complete tasks. Tr. 538. Dr. Morton further opined that it is "unlikely that [Plaintiff] could meet minimum standards of attendance, productivity, and social interaction to earn a living." Tr. 538.

In the decision, the ALJ gave Dr. Morton's opinion little weight, finding that "nothing in the record supports such significant limits" and that Dr. Morton's opinion was undermined by Plaintiff's

---

[1] Dr. Morton's January 17, 2014 opinion letter conflicts with the opinions of Gerald L. Peterson, Ph.D., and Bill Hennings, Ph.D., the agency nonexamining physicians, who opined that none of Plaintiff's limitations preclude gainful employment. Tr. 138-40, 170-71. Thus, the ALJ was required to provide specific and legitimate reasons for discrediting Dr. Morton's opinion that are supported by substantial evidence.

activities of daily living, such as her ability to perform household chores, drive her roommate to work, attend appointments, and shop. Tr. 26. The ALJ's reasoning falls short of specific and legitimate.

First, the ALJ fails to detail what specific portions of the objective record undermine Dr. Morton's opinion. A conflict between a provider's treatment notes and his or her opinion may constitute an adequate reason to discount it. *Ghanim*, 763 F.3d at 1161. Contrary to the ALJ's suggestion, Dr. Morton's treatment notes support his opinion. Dr. Morton's notes persistently reflect that Plaintiff suffered panic attacks when out in public, and reveal her tendency to isolate when depressed. Tr. 405, 487, 490, 542. For example, in an October 16, 2012 note, Dr. Morton indicated that Plaintiff wanted to stay in her "corner" due to increased depression and her anxiety prevented her from dining in a restaurant. Tr. 468. Dr. Morton's treatment notes reflect that Plaintiff enjoys gardening because it gives her motivation to leave the house each day, and that she may need help from her partner when gardening to reduce anxiety. Tr. 471. Dr. Morton's treatment notes consistently reflect ongoing depression, isolation, difficulty sleeping, with the occasional auditory or visual hallucination. Tr. 420. Additionally, Dr. Morton's treatment notes show that when Plaintiff does venture out into the public, she often requires a couple of days to recover. Tr. 472-73.

Second, Plaintiff's activities of daily living are not inconsistent with Dr. Morton's opinion. A claimant's ability to engage in meaningful adult activities or employment that conflict with a treating provider's opinion is an appropriate basis upon which to discredit that opinion. *Ghanim*, 763 F.3d at 1162. However, a holistic review of the record does not reveal an inconsistency between Dr. Morton's opinion and Plaintiff's activities. In the decision, the ALJ found that Plaintiff's ability

to drive her roommate to and from work, perform household chores, attend appointments, a shop undermined Dr. Morton's opinion. Tr. 26. The Court disagrees.

Here, Plaintiff testified that she drives her partner to and from work, but she does not leave the car. Tr. 102-03. Additionally, she testified, and Dr. Morton's treatment notes reflect, that Plaintiff only shops for groceries and must go with the assistance of her partner – she does not shop alone. Tr. 286. Further, the record reveals that Plaintiff typically attends appointments accompanied by a friend, or when she does go alone, she needs to recover afterwards. Tr. 472. Moreover, Plaintiff's ability to perform household chores is interrupted by her depressive episodes, as reflected in Dr. Morton's treatment notes. Tr. 487, 558.

Additionally, Plaintiff's ability to engage in some basic activities and occasionally socialize does not undermine Dr. Morton's overall opinion. *Franz v. Colvin*, 91 F.Supp.3d 1200, 1212 (D. Or. 2015). Although Dr. Morton's notes also record some improved mood and increased energy, these observations need to be "read in the context of the overall diagnostic picture" that Dr. Morton describes. *Ghanim*, 763 F.3d at 1162. As the ALJ indicated, Plaintiff did eat in restaurant twice in one weekend. Tr. 548. However, Plaintiff's ability to dine in a restaurant accompanied by her partner two times in the course of Dr. Morton's three years of treatment notes is not indicative of an ongoing trend, but is a sign of temporary improvement consistent with waxing and waning mental health symptoms. *Garrison*, 759 F.3d at 1013, 1017 (cautioning against discrediting physicians' opinions and claimant testimony where mental health symptoms wax and wane).

For these reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons, backed by substantial evidence in the record as a whole for rejecting Dr. Morton's opinion.

## II.    The ALJ Erred in Evaluating Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti*, 533 F.3d at 1039. At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.[2] *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *Ghanim*, 763 F.3d at 1163. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

---

[2] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility." The ALJ's decision in this case was issued April 11, 2014. I have previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). I adhere to that rationale here.

At the March 17, 2014 hearing, Plaintiff testified that she worked part time as an assistant cook two days per week for a total eight hours for Meals on Wheels. Tr. 88-89. Plaintiff testified that she was employed for five years. Tr. 89. Plaintiff testified that she also used to work as an in-home care provider for her brother and her mother. Tr. 90. Plaintiff stated that she does not like to leave the house, and that she will grocery shop with a friend, and is able to go to her doctor's appointments by herself. Tr. 92-93, 101. Plaintiff testified that in November 2013, she had worsening depression and was spending 90 percent of her time in bed. Tr. 96. Plaintiff testified that she does not take antidepressant medication because it makes her suicidal and she cannot afford it. Tr. 97, 280. Plaintiff testified that she sees a counselor monthly for her mental health issues. Tr. 98.

Plaintiff testified that she drives her partner to and from work everyday, but she does not get out of the car. Tr. 101. Plaintiff testified that when she is depressed, she will sit and cry, stays in bed, ignores the phone, and is antisocial. Tr. 102. Plaintiff testified that she gets panic attacks about once a month, even in her own home. Tr. 102. Plaintiff described that she gets diarrhea, shaking, and a migraine that can last from a few hours to several days. Tr. 103.

Plaintiff described that she has trouble with her knees, that she has difficulty rising from a squat, she cannot lift more than 20 pounds, and her arms hurt from vacuuming. Tr. 104. Plaintiff is able to do chores around the house for 20 to 30 minutes, then needs to rest.

In an April 28, 2012 Adult Function Report, Plaintiff described that her symptoms make it difficult to leave the house. Tr. 280. Plaintiff described that her panic attacks cause her uncontrollable shaking and jerking that can last from hours to days. Tr. 280. Plaintiff noted that she tries to combat her ADHD with charts and lists to that she can complete basic household chores. Tr.

280. Plaintiff described headaches that can last from hours to days, and that she takes over-the-counter medication for them. Tr. 281. Plaintiff stated that her fibromyalgia causes her pain all over, and that it keeps her awake at night. Tr. 281. Plaintiff described poor teeth and blurry vision. Plaintiff noted that she has acid reflux for which she takes over-the-counter medication, and irritable bowel syndrome that prevents her from leaving the house because it can cause accidents. Tr. 282. Plaintiff noted arthritis in her right knee, and that she needs a cane. Tr. 282. Plaintiff also described seasonal asthma and that she uses an inhaler, and arthritis in her hands, with swelling and stiffness in her knuckles. Tr. 282.

Plaintiff stated that in a typical day, she wakes, reads the paper or a book, works on the computer, performs household chores, completes crafts, makes dinner, then watches television until going to bed. Tr. 284. Plaintiff indicated she feeds birds in the yard and takes care of her cats. Tr. 284. Plaintiff indicated she has no problem with personal care, can make meals daily, can perform household chores, and can drive a car. Tr. 286. Plaintiff described that she is anxious and panicky when out in public, and will only shop in stores for food and pet supplies once a week with a friend. Tr. 286.

Plaintiff described that she can walk for an hour before needing to rest, and can concentrate for 15 minutes. Tr. 288. Plaintiff stated she can lift 20 pounds, and has trouble bending, squatting, standing, kneeling, and reaching. Tr. 289. Plaintiff stated that she needs to read instructions a couple of times to understand them, and needs to write things down to remember them. Plaintiff said her hands swell and hurt and being around other people is overwhelming. Tr. 290.

In a Pain and Fatigue Questionnaire, Plaintiff reported burning, aching, stinging, stabbing and cramping from head to toe all the time. Tr. 299. Plaintiff noted that using her muscles, lack of sleep,

and her panic attacks contribute to her pain and that hot showers and relaxing make the pain better. Tr. 299. Plaintiff stated that she takes three to four 30 minute rest periods each day. Tr. 299.

In the decision, the ALJ offered two reasons for discounting Plaintiff's credibility: (1) lack of objective medical evidence (knee, myofascial pain, depression); and (2) her activities of daily living are inconsistent with her alleged limitations. Some of ALJ's findings are not well supported.

First, the ALJ found that Plaintiff's allegations were not supported by the objective medical record. The lack of objective medical evidence to support a claimant's allegations can be a clear and convincing reason to discredit a claimant, so long as it is not the only reason. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Here, the ALJ detailed that Plaintiff's alleged disabling knee problems are not supported, citing the examination performed by Dr. Ellison. Dr. Ellison found that Plaintiff complained of pain on deep knee bending, but his examination found that there was no crepitation, effusion or instability, and that Plaintiff had normal station and gait, could tandem walk, and walk on heels and toes, she had full motor strength, muscle tone, intact sensation, and normal deep tendon reflexes. Tr. 529. The ALJ's findings are fully supported by Dr. Ellison's examination findings. Additionally, as the ALJ discussed, imaging of Plaintiff's knees revealed only mild medial compartment narrowing in the right knee, and mild patellofemoral arthritis bilaterally. Tr. 21. And, the ALJ detailed that although Plaintiff reported occasional use of a cane, it was not medically necessary. Tr. 22. Thus, the ALJ's findings concerning Plaintiff's knee problems are supported by substantial evidence.

The ALJ also detailed that Plaintiff's limitations from myofascial pain are not supported by the objective medical record. Here, the ALJ discussed that on examination, Dr. Ellison found a full range of motion in all her joints, except her shoulders where range of motion was mildly decreased.

Tr. 529. The ALJ noted that inconsistent with Plaintiff's complaints, Dr. Ellison found that Plaintiff had some muscle tenderness, but not especially in the fibromyalgia points. Tr. 529. Additionally, the ALJ noted that Dr. Ellison indicated that Plaintiff had normal motor strength, muscle tone and bulk without atrophy, and full range of motion without evidence of arthritis. Tr. 25. Furthermore, as the ALJ detailed, in November 2013, Plaintiff responded well to osteopathic manipulative treatment on her mid-thoracic spine, decreasing her pain from an eight out of ten to five out of ten. At a later visit, Plaintiff reported to Dr. Zhang that she was "feeling much better", and that her pain continued to decrease to a three out of ten. Tr. 561, 563. Consistent with the ALJ's findings, Plaintiff reported to her providers in March 2011 that her myofascial pain syndrome was largely unchanged and controlled with tylenol, mind/body therapy on her own, exercise, and marijuana. Tr. 363, 371, 401, 448. Indeed, Plaintiff did not complain of myofascial pain syndrome or fibromyalgia to her treating providers until October 22, 2013, when her pain became more intense with her increased depression. Tr. 494. As detailed above, the ALJ found Plaintiff disabled beginning November 1, 2013. Tr. 29. Therefore, the ALJ's findings concerning Plaintiff's myofascial pain are supported by substantial evidence.

However, the ALJ's findings concerning Plaintiff's depression are problematic. In the decision, the ALJ detailed that in January 2014, Plaintiff reported worsening depression and presented with a depressed affect and rapid speech. Tr. 558-60. The ALJ found, however, that prior to that time, Plaintiff largely presented as alert and cooperative, with normal mood and affect, with normal attention span and concentration, citing predominantly records from Plaintiff's treating physicians for her physical impairments. Tr. 415, 442, 548, 562, 566. Yet, the ALJ fails to adequately consider the numerous other treatment records with Dr. Morton, reporting episodes of

panic attacks followed by isolation, and episodes of depression. Tr. 405, 468, 487, 490, 542. As discussed above, the ALJ's findings concerning Plaintiff's depression fails to take a holistic view of Plaintiff's mental health symptoms. Additionally, the ALJ appears to suggest that Plaintiff's mental health symptoms are not significant because Plaintiff is not taking psychotropic medications. Tr. 24. The ALJ acknowledged that Plaintiff testified that she becomes suicidal when taking antidepressant medications, noting she had not attempted suicide since 2004. Tr. 24, 97. Oddly, the ALJ noted that Plaintiff has been in counseling, but did not discuss Dr. Morton's treatment notes when considering whether objective evidence supports Plaintiff's allegations of mental health limitations. Accordingly, the Court concludes that the ALJ's finding that objective evidence fails to support Plaintiff's mental health limitations is not supported by substantial evidence reviewing the record as a whole.

The ALJ's second reason for discounting Plaintiff's credibility similarly fails. An ALJ may discredit a claimant that reports participation in everyday activities indicating capacities that are transferrable to a work setting, or where those activities contradict a claim of total disability. *Molina*, 674 F.3d at 1113. Here, the ALJ discounted Plaintiff's allegations of severe panic attacks because Plaintiff testified that she is able to leave her house to drop off and pick up her roommate from work, was able to dine in a restaurant twice in a weekend, and is able to shop and attend appointments. The ALJ also noted that Plaintiff is able to perform household chores and cooking, and that working in garden has a positive effect on her mood. As detailed at length above, although Plaintiff does drive her roommate to and from work, she does not leave the car and she does not typically attend appointments by herself. Indeed, the record reflects that Plaintiff was encourage to invite her roommate to assist with gardening so as to minimize her anxiety. Tr. 471. Plaintiff's

ability to prepare meals and do laundry does not indicate that she can withstand the rigors of working eight hours a day, five days a week. *See Hernandez-Devereaux v. Astrue*, 614 F.Supp.2d 1125, 1147 (D. Or. 2009) (finding ALJ erred in discrediting claimant based on ability to cook, clean, and attend appointments); *see also Orn*, 495 F.3d at 639 (finding ALJ erred in discounting claimant's testimony where no evidence that claimant spent substantial part of day engaged in transferrable activities). Additionally, contrary to the ALJ's finding, Plaintiff does not shop alone; she waits to be accompanied by a friend or with her roommate. Tr. 286. Thus, based on the record as whole, the Court concludes that Plaintiff's activities of daily living do not provide a clear and convincing basis for discrediting her allegations.

Because two of the ALJ's reasons supporting the adverse credibility determination are not supported by substantial evidence, the Court must determine whether the ALJ's reliance on such reasons is harmless. *Carmickle*, 533 F.3d at 1162 (stating an ALJ's citation to erroneous reasons is harmless so long as the "ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record[ ]"). The ALJ's error is not harmless in this instance. The ALJ's remaining reasons, the lack of objective evidence to support the degree of Plaintiff's knee and myofascial pain, cannot provide clear and convincing evidence to discredit Plaintiff. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-48 (9th Cir. 1991) (en banc) (holding that once claimant establishes the existence of a medically ascertainable impairment, the ALJ cannot deny disability benefits solely because the degree of impairment is not supported by objective medical evidence, but must make specific findings demonstrating that the ALJ did not arbitrarily discredit claimant's pain testimony). Additionally, weighing the evidence that supports and detracts from the Commissioner's decision, the Court concludes the ALJ's reasons for discounting Plaintiff's

credibility are insufficient to meet the specific, clear and convincing standard. *See Burrell v. Colvin,* 775 F.3d 1133, 1139-40 (9th Cir. 2014) (finding that one remaining weak reason for adverse credibility determination did not satisfy clear and convincing standard). Therefore, the ALJ has erred.

## III.    Remedy

After finding the ALJ erred, the Court must determine whether to remand Plaintiff's case to the agency for payment of benefits or for additional investigation or explanation. Although a court should generally remand to the agency for additional investigation or explanation, the court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The Ninth Circuit precludes the district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell*, 775 F.3d at 1141. The court must determine if the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Next, the court must review the record as a whole and determine whether it is fully developed and free of conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1101. Finally, the court must consider whether "the ALJ would be required to find the claimant disabled on remand" if the improperly discredited evidence were credited as true. *Garrison*, 759 F.3d at 1020; *Dominguez*, 808 F.3d at 407. If the above are satisfied, the court may exercise its discretion to remand the case for an award of benefits. *Dominguez*, 808 F.3d at 407.

All three conditions of the credit-as-true rule are satisfied here. First, as discussed at length above, the ALJ erred in discounting Plaintiff's testimony and in discrediting Dr. Morton's opinion.

Second, the record is fully developed and the Commissioner proposes no reason to convene further proceedings, nor does the Commissioner suggest that any ambiguities need to be resolved and the Court finds none. Third, if the improperly discredited evidence is credited as true, it is clear that the ALJ would be required to find Plaintiff disabled on remand. Dr. Morton opined that Plaintiff is "unlikely to meet minimum standards of attendance, productivity, and social interaction" due to interference from her mental health symptoms. Tr. 538. Plaintiff testified that being around others is overwhelming and can trigger panic attacks. Tr. 102. She also testified that her panic attacks can last from several hours to several days and that they occur once a month. Tr. 103. Plaintiff testified that her panic attacks worsened after an exchange with her former boss in June 2010. Tr. 91, 280. At the hearing, the vocational expert testified that absences that exceed one or two days each month would not be tolerated. Tr. 110. Additionally, the vocational expert testified that if an employee were only ten percent less productive than her coworkers, competitive employment cannot be sustained. Tr. 110. Accordingly, Plaintiff satisfies the credit-as-true standard.

Moreover, having reviewed the record carefully, the Court has no basis to seriously doubt that Plaintiff is disabled. Plaintiff has been afflicted with panic attacks and depressive episodes that occasionally last for days at a stretch. Even if some of her symptoms have lessened briefly, the record reflects that Plaintiff minimizes social interaction and limits environmental stressors. Thus, the Court is convinced that Plaintiff's mental health symptoms prevent her from being capable of full time employment on a sustained basis since her amended alleged onset date of June 16, 2010.

////

////

////

## CONCLUSION

For all these reasons, the Commissioner's final decision partially denying benefits to Plaintiff from June 16, 2010 to November 1, 2013 is REVERSED and this proceeding is REMANDED for an immediate calculation and award of benefits beginning June 16, 2010.

IT IS SO ORDERED.

DATED this _10_ day of JULY, 2017.

Malcolm F. Marsh
United States District Judge